IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JACK "JAY" PALMER, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  2:11-CV-217-MHT |
| | ) | |
| INFOSYS TECHNOLOGIES LIMITED INCORPORATED, | ) | |
| | ) | |
| Defendant. | ) | |

PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO COMPEL
ARBITRATION

**INTRODUCTION**

Infosys correctly pointed out in its Motion to Compel Arbitration that this arbitration agreement is governed by California law. However, Infosys neglected to tell the Court that this past August, this very Arbitration Agreement was declared unenforceable under California law. *Awasthi v. Infosys Technologies Limited,* Superior Court of California, County of Alameda, RG09486022 (Aug. 5, 2010) (Exhibit 1) Although *Awasthi* is not a Reported decision, Infosys was aware of the decision because Infosys was the Defendant; the arbitration clause in *Awasthi* was the same Infosys Form No. 5 as in this case; and Infosys was represented by the same law firm that filed the Motion to Compel Arbitration in this case. The "Register of Actions" in *Awasthi* shows that a "Notice of Settlement" was filed on December 7, 2010, and no appeal was taken on the ruling denying Infosys' Motion to Compel Arbitration. (If the Court would like to review this case and pleadings in more detail, it can go to the Alameda County Superior Court's

website at http://apps.alameda.courts.ca.gov/domainweb/html/casesumbody.html and enter the

case number, RG09486022.)

Palmer respectfully submits that this Court should follow the guidance of the California

Court in *Awasthi* and summarily deny Infosys' Motion to Compel Arbitration. Should this Court

decide to consider Infosys' motion further, under both Federal and California law, this Court, not

an arbitrator, is required to decide the question of the enforcement of this Arbitration agreement.

*E.g., First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S. Ct. 1920, 1923, 131 L.

Ed. 2d 985 (1995); *California Code of Civil Procedure* Section 1280 *et. seq.* As will be shown in

detail below, Infosys' standard form arbitration clause is unconscionable under both Federal and

California law and is therefore unenforceable.


## FACTS

Plaintiff Jack "Jay" Palmer, Jr. is currently employed by Infosys as a Principal

Consultant—Enterprise Solutions and has been so employed since August, 2008. In 2010,

Palmer learned that Infosys was guilty of mass visa and tax fraud. He reported these and other

violations to Infosys' Human Resources Department, Corporate Counsel and Whistleblower

Team. Since that time, Palmer has been subjected to death threats, retaliation, harassment and

discrimination which led to the filing of this lawsuit. Even after the lawsuit was filed, the

harassment has continued. Among other things, Infosys has refused to pay Palmer his bonuses

and refused to reimburse expenses. In addition, when Infosys learned that Palmer was

cooperating with Federal investigators it demanded that he turn over his laptop, which contains

evidence of Infosys' crimes, to Infosys and threatened to fire Palmer if he turned it over to the

authorities. (Exhibit. 1)

The arbitration clause is far from as clear and prominent as Infosys suggests. In order to address the legal issues, Palmer submits that a thorough discussion of the facts leading up to the signing of the document that contains the arbitration provision is important.

Prior to accepting employment with Infosys, Palmer was the Director of Implementation at another company. When that company wanted to promote and transfer him to Milwaukee, he chose not to accept the transfer, took a severance package and started looking for other job opportunities on June 30, 2010. (Exhibit 1)

Palmer was contacted by Miriam Johnston of DNL Global, an employment recruiting firm that represented Infosys in the recruitment and screening of prospective employees. Ms. Johnston conducted the initial screening of Palmer for Infosys. During this screening, the salary range was discussed, but arbitration was not. (Exhibit 1)

A few days later, Palmer participated in a telephone interview with a Senior Engagement Manager at Infosys. Nothing was mentioned about arbitration in that discussion. Infosys flew Palmer to its office in New Jersey to have a face-to-face interview with an Assistant Vice President. During this interview, they went over Infosys' philosophy and what Palmer's "Role" and duties would be if hired. They also discussed Palmer's philosophies and methods on supply chain and enterprise solutions. At the end of the meeting, the VP told Palmer that he wanted Palmer "on his team." At no time during this interview and visit did the VP nor anyone with Infosys ever mention anything about an arbitration requirement. (Exhibit 1)

Palmer later received another call from Infosys' recruiter, Ms. Johnston, during which they negotiated and agreed to a salary. Benefits were also discussed but no mention was made about an arbitration agreement. Palmer then received a call from Infosys' Head Recruiter who

made a firm offer that Palmer accepted. Again nothing was discussed about arbitration. (Exhibit 1)

On August 8, 2008, Palmer received an email from Infosys Human Resources extending the offer of employment in writing. (Exhibit 2) Attached to that email in PDF format was a letter dated August 8, 2008 from an Associate Vice President in Infosys' Human Resources Department. (Exhibit 3)  This letter was a formal offer of employment and it did not mention arbitration either. Attached to the letter was what Infosys called an Annexure. (Exhibit 3)   The Annexure stated that "this offer of employment is contingent upon your (i) Signing and agreeing to be bound by the Company's At-will, Confidential Information, Invention Assignment, Non-Solicitation, Non-Competition and Arbitration Agreement." However, Palmer was not provided with a copy of that document. Palmer testified by affidavit that he concluded from this Annexure that if he did not agree to that Agreement, whatever it may be, that he would not be employed with Infosys.  Palmer, Exh.1)

On August 11, 2008, Palmer received an e-mail from US_Onboarding@infosys.com. Attached to that e-mail was a document in PDF format with filename "US Joining Kit.pdf." The e-mail instructed Palmer to "Print & take the required action on the documents in the US Joining Kit PDF file." (Exhibit 4)  The "Joining Kit" (Exhibit 5) started out with the following:

> Congratulations and welcome to Infosys!

> This document contains all of the joining documents which you can review before your first day on the job in order to understand the terms and conditions of employment and to expedite the joining process."

As can be seen, this joining kit is 57 pages long and contains the following 10 Forms:

> Form No. 1    New Hire Checklist

> Form No. 2    Personal Data Sheet

Form No. 3    Details for ID Card Printing

Form No. 4    Code of Business conduct & Ethics

Form No. 5    At-Will, Confidential information, Invention Assignment, Non-Compete and Arbitration Agreement

Form No. 6    Unlawful Harassment

Form No. 7    Whistle Blower Policy

Form No. 8    COBRA Initial Notification

Form No. 9    Voluntary EEO Survey

Form No. 10   New Hire Questionnaire

Tucked away in Form No. 5, the "At-will, Confidential Information, Invention Assignment, Non-Solicitation, Non-Competition and Arbitration Agreement" is the arbitration clause in issue. This form that Infosys now claims requires arbitration was just 1 of 6 requirements in Form No. 5 which was just 1 of 10 forms in a 57 page document that was represented to be a "Joining Kit." Palmer testified that it was his understanding that he was required to sign each of these documents as a condition of his employment at Infosys and that these forms were a take-it or leave-it requirement. (Exhibit 1)

Palmer did not have any discussions with anyone connected with Infosys regarding arbitration. During his screening and several interviews and discussions, arbitration was never even brought up. It was only raised after Palmer accepted an offer of employment and was not a subject that was negotiated between Palmer and Infosys. Palmer testified that he believed that, as the August 11 letter stated, his job was "contingent" on signing the documents and that if he did not, he would not be hired, despite the oral offer and acceptance of employment.

5

Infosys never provided Palmer with the arbitration rules set out in the California Code or any rules of the American Arbitration Association. (Exhibit 1)

## ARGUMENT

### I.   THIS COURT, NOT AN ARBITRATOR, IS REQUIRED TO DECIDE THE VALIDITY AND ENFORCEABILITY OF THIS AGREEMENT

The United States Supreme Court has made it clear that the question "who has the primary power to decide arbitrability turns upon what the parties agreed about *that* matter." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S. Ct. 1920, 1923, 131 L. Ed. 2d 985 (1995) Unless the parties "clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT & T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649, 106 S. Ct. 1415, 1418, 89 L. Ed. 2d 648 (1986)

The arbitration clause in this case does not contain any language even suggesting that Palmer and Infosys agreed that an arbitrator has the authority to decide whether this arbitration clause is valid or unconscionable. The arbitration clause here certainly has no language even close to the clauses relied on by Infosys, *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010) and *Anderson v. Pitney Bowes, Inc.*, 2005 WL 1048700 (N.D. Cal. May 4, 2005) The arbitration clause in *Rent-A-Center* expressly stated the following:

> "The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable."

130 S. Ct. at 2775. The arbitration clause in *Anderson* set out on page 2 of the Opinion

expressly stated as follows:

> "The arbitrator shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including but not limited to any claim that all or any part of this Agreement is void or voidable."

Infosys did not and cannot cite any similar provision in this arbitration clause whereby Infosys and Palmer agreed to submit the question of enforceability to the arbitrator. There is absolutely no language in the agreement to this effect, much less "clear and unmistakable evidence" that an arbitrator, and not this Court, should decide the enforceability of the Agreement.

### A. The Parties Agreed That Any Arbitration Would Be Under The California Code; Not AAA Rules.

The arbitration clause in issue specifically provides in pertinent part as follows:

> I AGREE THAT ANY AND ALL CONTROVERSIES, CLAIMS, OR DISPUTES. . SHALL BE SUBJECT TO BINDING  ARBITRATION UNDER THE ARBITRATION RULES SET FORTH IN CALIFORNIA CODE SECTION 1280 THROUGH 1294.2 INCLUDING SECTION 1283.05 (THE "RULES") AND PURSUANT TO CALIFORNIA LAW."

(Exhibit 5, Form No.5, paragraph 11a.) This arbitration clause also specifically provides that if AAA's Rules are inconsistent with California Code Section 1280 Through 1294.2 including section 1283.05 (The "Rules") and pursuant to California Law, that the California Rules "shall take precedence" (Exhibit 5, Form No.5, paragraph 11b.)

These California "Rules" expressly provide that the Court, not the arbitrator, decide arbitrability. The Rules unequivocally state the following:

> § 1281.2  Order to arbitrate controversy; petition; *determination of court*

> On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the *court* shall order the petitioner and the respondent to arbitrate the controversy if *it* determines that an agreement to arbitrate the controversy exists, unless *it* determines that:

> (b) Grounds exist for the revocation of the agreement. . . .

Cal. Code Civ. Pro. §1281.2 (emphasis added).  This issue is not even reasonably arguable; the Court decides whether an arbitration agreement exists and whether there are grounds for revocation.  *See also Freeman v. State Farm Mut. Auto Ins. Co.*, 14 Cal. 3d 473, 480 (1975) ("The clear purpose and effect of section 1281.2 is to require the court to determine in advance whether there is a duty to arbitrate the controversy which has arisen. The performance of this duty necessarily requires the court to examine and, to a limited extent, construe the underlying agreement.").  Thus, the California "Rules" do not allow an arbitrator to determine the enforceability of this arbitration clause and Infosys' arguments to the contrary are in direct violation of this law.

### B.      The Parties Did Not Agree To Be Bound By AAA's Employment Arbitration Rules and Mediation Procedures

Infosys' suggestion that Rule 6 of AAA's Employment Arbitration Rules and Mediation Procedures http://www.adr.org/sp.asp?id=32904 divests this Court of its jurisdiction is just wrong. Those Rules do not even apply to these parties or to this arbitration clause.

A review of AAA's website shows that AAA has numerous different arbitration and mediation rules of which, the Employment Arbitration Rules and Mediation Procedures is just one. However, the arbitration agreement in this case does not even mention those Rules. The only reference to AAA in the agreement is under the "Procedure" section and provides that the arbitration will be administered by AAA and the arbitrator "SELECTED IN A MANNER CONSTISTENT WITH ITS ***NATIONAL RULES FOR THE RESOLUTION OF EMPLOYMENT DISPUTES.***" (Emphasis added)(Exhibit 5, Form No.5, paragraph 11b) Those Rules which can be found at http://www.adr.org/sp.asp?id=22075#n6 (Exhibit 11) are separate and distinct from the "Employment Arbitration Rules and Mediation Procedures relied on by Infosys. (Exhibit 12) More importantly, Rule 6 of AAA's National Rules for the Resolution of Employment Disputes is not even similar to Rule 6 of the Employment

Arbitration Rules and Mediation Procedures relied on by Infosys.

Rule 6 of AAA's Employment Arbitration Rules and Mediation Procedures (Exhibit 12), the rule cited and relied on by Infosys, provides as follows:

Jurisdiction

a. The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

b. The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

c. A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

Rule 6 of AAA's National Rules for the Resolution of Employment Disputes (Exhibit 11), the only AAA Rules referred to in the Arbitration Agreement, provides as follows:

Administrative and Mediation Conferences

Before the appointment of the arbitrator, any party may request, or the AAA, in its discretion, may schedule an administrative conference with a representative of the AAA and the parties and/or their representatives. The purpose of the administrative conference is to organize and expedite the arbitration, explore its administrative aspects, establish the most efficient means of selecting an arbitrator, and to consider mediation as a dispute resolution option. There is no administrative fee for this service.

At any time after the filing of the Demand, with the consent of the parties, the AAA will arrange a mediation conference under its Mediation Rules to facilitate settlement. The mediator shall not be any arbitrator appointed to the case, except by mutual agreement of the parties. There is no administrative fee for initiating a mediation under AAA Mediation Rules for parties to a pending arbitration.

As can be seen, Rule 6 of the "National Rules" does not even relate to the jurisdiction of the

arbitrator or the arbitrator's power to determine the validity or enforceability of the arbitration clause. Moreover there is no Rule in the "National Rules" entitled "Jurisdiction" or that in any way authorizes an arbitrator to determine its jurisdiction or determine if an arbitration clause is unconscionable.

Apparently Infosys is confused by its own arbitration clause. If Infosys truly believes that some AAA Rules that are not even addressed in the arbitration agreement take precedence over the California Rules then it should not argue that its arbitration clause is "clear and unambiguous."

## II.     CALIFORNIA HAS DECLARED INFOSYS' ARBITRATION AGREEMENT UNENFORCEABLE ON THE GROUNDS IT IS UNCONSCIONABLE.

Infosys acknowledged in its brief that this arbitration agreement is governed by California law. This very arbitration agreement was declared unenforceable under California law just last August. *Awasthi v. Infosys Technologies Limited,* Superior Court of California, County of Alameda, RG09486022 (Aug. 5, 2010) (Exhibit 6) The facts and arguments in *Awasthi* are not just similar, but are identical to this case. Consider the following examples:

1. Ms. Awasthi was hired by Infosys as a "Consultant-Enterprise Solutions." (Exhibit 9 ) Mr. Palmer was hired by Infosys as a "Senior Consultant-Enterprise Solutions"-- a step grade higher. (Exhibit 3)

2. Ms. Awasthi and Mr. Palmer received the same form email and letter offering employment with the same form "Annexure."(Exhibits 8 and 2 ) This "Annexure" specifically provided that the "offer of employment is ***contingent*** upon your signing and agreeing to be bound by the Company's  At-will, Confidential Information, Invention Assignment, Non-Solicitation, Non-

Competition and Arbitration Agreement." (emphasis added)

3. The arbitration provision in *Awasthi*, contained in the Infosys "US Joining Kit--Form No. 5--At-will, Confidential Information, Invention Assignment, Non-Solicitation, Non-Competition and Arbitration Agreement " (Exhibits 10) is identical to the Infosys "US Joining Kit--Form No. 5--At-will, Confidential Information, Invention Assignment, Non-Solicitation, Non-Competition and Arbitration Agreement" in this case (Exhibit 5, Form No.5).This Form provides that the Arbitration agreement is "a condition of employment."

4. The Arbitration clause was only 1 of 6 conditions in Infosys Form No. 5 and this Form was just 1 of 10 Forms in the 57 page Joining Kit that Ms. Awasthi and Mr. Palmer were required to execute as a condition of employment.

5. Ms. Awasthi testified by affidavit in her case that she "was never given the opportunity to negotiate with anyone with Infosys regarding any clause about arbitration." (Exhibit 7, p.3 paragraph 9) Mr. Palmer testified in his affidavit that he was never given an opportunity to negotiate the arbitration requirement. (Exhibit 1)

6. Infosys was represented by Littler Mendelson in *Awasthi*; the same law firm that is representing it in this case.

7. The Littler firm filed a "Petition to Compel Arbitration "in *Awasthi* (Exhibit 13) presenting  the same legal arguments as it does in this Motion to Compel Arbitration:

   A. *Awasthi*—"The Parties Agreed That Any Challenges to the Existence, Validity and Enforceability of the Arbitration Agreement Would Be

Decided by an Arbitrator." (Exhibit 13, p. 4)

*Palmer*---"The parties agreed to arbitrate any challenges to the existence, validity and enforceability of the Agreement." (Infosys' Motion, p. 5)

    B.   *Awasthi*---"The Parties' Arbitration Agreement is Valid and Enforceable under Both Federal and State Law." (Exhibit 13, p. 6)

*Palmer*---"The Agreement is valid and enforceable." (Infosys' Motion, p. 5)

With respect to the issue of enforceability, the *Awasthi* court, citing *California Code of Civil Procedure* Sections 1281, 1281.2(b) and *Armendariz v.Foundation Health Psychcare Services, Inc.* (2000) 24 Cal. 4th 83, 113-121,held that "the arbitration agreement is not enforceable as it is unconscionable." In addition, the *Awasthi* court specifically found that this arbitration agreement was both procedurally and substantively unconscionable. Thus, despite Infosys' argument that "arbitration under the instant provision constitutes a reasonable and conscionable substitute for a judicial forum" (Brief pp.12-18) a California court, considering the very same arguments on the very same Infosys form documents ruled otherwise.

Although the *Awasthi* court did not specifically address the issue of whether the court or arbitrator is to decide the enforceability of the Infosys form arbitration agreement, the fact that the *Awasthi* court decided the issue certainly proves that she concluded that the court and not an arbitrator was required to decide this issue.

III.    <u>**INFOSYS'S PURPORTED ARBITRATION CLAUSE IS UNCONSCIONABLE AND THUS, NOT ENFORCEABLE**</u>

Palmer respectfully submits that based on *Awasthi, this* Court should deny Infosys'

Motion to Compel Arbitration. Even if Court decides to delve further, both Federal and California law prove that this arbitration clause is, in fact, unconscionable and thus, unenforceable.

Section 2 of the *FAA* provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 *U.S.C.* § 2 The United States Supreme Court has made clear that arbitration agreements, like other contracts, may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent-A-Ctr., W., Inc. v. Jackson*, 130 S. Ct. 2772, 2776, 177 L. Ed. 2d 403 (2010)

Similarly, unconscionable contracts are not enforceable under California law. In 1979, the California Legislature enacted Civil Code section 1670.5, which codified the principle that a court can refuse to enforce an unconscionable provision in a contract. *Armendariz*, 6 P.3d at 689. Pursuant to Cal. Civ. Code § 1670.5(a) (West), "if the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." In addition, California law expressly applies this principle to arbitration agreements. By statute, "a written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." *Cal. Civ. Proc. Code* § 1281 (West) Also, by statute in California, a court is not to order arbitration if it determines that "grounds exist for the revocation of the agreement." Cal. Civ. Proc. Code § 1281.2(b) (West)

In *Armendariz* v. *Found. Health PsychcareServs., Inc.,* 24 Cal. 4th 83, 113, 6 P.3d 669 (2000), the case relied on by the *Awasthi* court, the Supreme Court of California thoroughly addressed the doctrine of unconscionability and provided guidance for analyzing cases like this one where a plaintiff challenges the enforceability of an arbitration clause. The

Supreme Court of California described the initial approach as follows:

> "Unconscionability analysis  begins with an inquiry into whether the contract is one
> of adhesion. (*Id.* at pp. 817–819, 171 Cal.Rptr. 604, 623 P.2d 165.) "The term
> [contract of adhesion] signifies a standardized contract, which, imposed and drafted
> by the party of superior bargaining strength, relegates to the subscribing party only
> the opportunity to adhere to the contract or reject it." (*Neal v. State Farm Ins. Cos.*
> (1961) 188 Cal.App.2d 690, 694, 10 Cal.Rptr. 781.) if the contract is adhesive, the
> court must then determine whether "other factors are present which, under established
> legal rules — legislative or judicial — operate to render it [unenforceable]." (*Scissor–
> Tail, supra,* at p. 820, 171 Cal.Rptr. 604, 623 P.2d 165, fn. omitted.) "Generally
> speaking, there are two judicially imposed limitations on the enforcement of adhesion
> contracts or provisions thereof. The first is that such a contract or provision which
> does not fall within the reasonable expectations of the weaker or 'adhering' party will
> not be enforced against him. [Citations.] The second — a principle of equity
> applicable to all contracts generally — is that a contract or provision, even if
> consistent with the reasonable expectations of the parties, will be denied enforcement
> if, considered in its context, it is unduly oppressive or 'unconscionable.' " (*Ibid.*)
> Subsequent cases have referred to both the "reasonable expectations" and the
> "oppressive" limitations as being aspects of unconscionability. (See *A & M Produce
> Co. v. FMC Corp.* (1982) 135 Cal.App.3d 473, 486–487, 186 Cal.Rptr. 114 (*A & M
> Produce Co.*).)

*Armendariz*, 6 P.3d at 689.

Under *Armendariz,* the arbitration clause here clearly is adhesive because it too, was

imposed on employees as a condition of employment and there was no opportunity to negotiate.

115, 6 P.3d 669, 690 (2000) this arbitration clause clearly meets the 3 elements required by

*Armendariz*:

      1.  It is a standardized contract;

      2.  It was imposed and drafted by Infosys, the party of superior bargaining strength; and

      3.  It relegates to the subscribing party, Jay Palmer, only the opportunity to adhere to the

         contract or reject it.

Actually, Palmer was put in the position of either signing this agreement along with 9 other forms in the Joining Kit or losing a job that had been offered and accepted without any mention of an arbitration agreement.

*Armendariz* reaffirmed California law that "unconscionability" has both a procedural and substantive element stating the following:

> As explained in *A & M Produce Co., supra,* 135 Cal.App.3d 473, 186 Cal.Rptr. 114, "unconscionability has both a 'procedural' and a 'substantive' element," the former focusing on "oppression" or "surprise" due to unequal bargaining power, the latter on "overly harsh" or "one-sided" results. (*Id.* at pp. 486–487, 186 Cal.Rptr. 114.) "The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." (*Stirlen v. Supercuts, Inc., supra,* 51 Cal.App.4th at p. 1533, 60 Cal.Rptr.2d 138 (*Stirlen* ).) But they need not be present in the same degree. "Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves." (15 Williston on Contracts (3d ed. 1972) § 1763A, pp. 226–227; see also *A & M Produce Co., supra,* 135 Cal.App.3d at p. 487, 186 Cal.Rptr. 114.) In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.

*Armendariz,* 6 P.3d at 690

## A.    This Arbitration Agreement Is Procedurally Unconscionable.

In *Pokorny v. Quixtar, Inc.,* 601 F.3d 987, 996-97 (9th Cir. 2010), the Federal Court of Appeals, addressing "procedural unconscionability, stated the following:

> In assessing procedural unconscionability, the court, under California law, focuses on the factors of surprise and oppression in the contracting process, including whether the contract was one drafted by the stronger party and whether the weaker party had an opportunity to negotiate. *See Davis,* 485 F.3d at 1073. An agreement or any portion thereof is procedurally unconscionable if "the weaker party is presented the clause and told to 'take it or leave it' without the opportunity for meaningful negotiation." *Szetela v. Discover Bank,* 97 Cal.App.4th 1094, 118 Cal.Rptr.2d 862, 867 (2002). Thus, we have said that a contract is procedurally unconscionable under California law if it is "a standardized contract, drafted by the party of superior bargaining strength, that relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Ting,* 319 F.3d at 1148.

In *Pokorny*, the Court of Appeals noted that Quixtar was a large corporation doing business throughout the United States and occupied a superior bargaining position to that of the plaintiffs. That Court also noted that the plaintiffs did not negotiate the terms of the arbitration agreements and that the agreements were presented to the plaintiffs on a take-it-or-leave-it basis. Based on those facts, the Ninth Circuit stated that this "oppressive behavior is the quintessential characteristic of a procedurally unconscionable agreement." *Id.* at 996.

The facts here are the same. Infosys does business throughout the United States and the world and "occupied a superior bargaining position" to Palmer. During numerous interviews and salary negotiations, arbitration was never mentioned and certainly the terms of arbitration were not negotiated. Like *Pokorny*, this arbitration clause was a part of a "standardized" form document" that was required on a take-it or leave-it basis. In addition, Infosys' own letters and documents made it clear that the arbitration clause was a take-it or leave-it requirement. The offer letter which was sent after the verbal offer and acceptance stated that "This offer of employment is ***contingent*** upon your (i) Signing and agreeing to be bound by ***the Company's*** At-will, Confidential Information, Invention Assignment, Non-Solicitation, Non-Competition and Arbitration Agreement . (Exhibit 3, p. 3) Infosys repeated this requirement again in the same offer document by stating "You also . . . agree, ***as a condition of your employment***, to be bound by ***the Company's*** At-will, Confidential Information, Invention Assignment, and Arbitration Agreement." (Exhibit 3, p. 4) (Emphasis added). As Infosys's Offer Letter makes clear, this was the "Company's" agreement, not Palmer's agreement.

Similarly, the At-will, Confidential Information, Invention Assignment, Non-Solicitation, Non-Competition and Arbitration Agreement states on the very first line that it is "a condition of my employment with Infosys Technologies Limited." (Exhibit 5)  It was Infosys' standard arbitration clause that Infosys employees, including Palmer and Awasthi, had to sign as a condition of employment at Infosys.  The arbitration clause was a non-negotiable, take-it or leave-it proposition.

16

Palmer was allowed to negotiate the amount of his salary and discuss goals and expectations, but was never given any opportunity to negotiate Infosys's standard, required, uniform 10 Forms in the 57 page Joining Kit that included an arbitration clause.  Infosys's own document recognizes this distinction because it acknowledges that the parties may change Palmer's "duties, salary or compensation" but that this "will not affect the validity or scope of this Agreement."  (Exhibit 5)

The *Pokorny* Court noted that the company there failed to attach a copy of the rules that contained "the full description of the non-binding conciliation and binding arbitration processes."  Thus, the Court concluded that those plaintiffs "were not even given a fair opportunity to review the full nature and extent of the binding arbitration processes to which they would be bound" before they signed their agreements. These problems, according to the Court, "multiply the degree of procedural unconscionability of the ADR agreements." 601 F.3d at 997

The facts here are more egregious. First, like in *Pokorny,* Palmer was never furnished any rules related to arbitration. The agreement here provides that the arbitration is to be governed by the California Code, but Infosys now claims that a set of AAA rules, the "Employment Arbitration Rules and Mediation Procedures" apply even though they are not even mentioned in the arbitration agreement. Thus, even if Palmer had gone to AAA's website and had searched for the "National Rules for the Resolution of Employment Disputes" that were identified in the arbitration clause he would have been looking at the wrong rules, at least not the rules Infosys claims apply here.

Infosys not only failed to provide any rules, it now seeks to enforce rules that are not even contained in the agreement. Certainly, Palmer was "not even given a fair opportunity to review the full nature and extent of the binding arbitration processes to which they would be bound" before he signed the agreements.

Infosys tries to distinguish this case from *Net Global Mktg., Inc. v. Dialtone, Inc.*, 217 F. App'x. 598 (9th Cir. 2007) In *Net Global,* the Ninth Circuit found that an arbitration

agreement that was "located twelve pages into a seventeen page legal document" that "drafted by the party seeking to enforce the disputed terms," was not "clearly disclose[d] *Id.* at 601. The arbitration agreement here is even more hidden. It is tucked away on page 6 of Form No. 5 At-Will, Confidential Information, Invention Assignment, Non-Compete and Arbitration Agreement which is only one of 10 Forms in a 57 page "Joining Kit."

Infosys claims in its brief that since the arbitration agreement contains a sentence that Palmer could seek legal advice that the agreement is not procedurally unconscionable. This one sentence in a 57 page document does not cure the problem. Hiring and paying a lawyer would not have helped Palmer in this situation. First, a lawyer would not be clairvoyant enough to know that Infosys wanted to apply a set of AAA Rules that were not identified in the arbitration clause. Also, any lawyer would conclude and would have had to advise Palmer that the documents clearly set out that the arbitration agreement is a required, non-negotiable condition and a take-it or leave-it proposition.

Under California law, the issue is not whether Palmer could have gotten a lawyer; the issue is whether the arbitration provision is a non-negotiable requirement of employment. The Ninth Circuit and California have addressed similar claims by employers. In *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003) Circuit City claimed a lack of procedural unconscionablity on the grounds Ingle had sufficient time-three days-to consider the terms of the arbitration agreement.  The Ninth Circuit disagreed holding as follows:

> The amount of time Ingle had to consider the contract is irrelevant. We follow the reasoning in *Szetela v. Discover Bank,* 97 Cal.App.4th 1094, 118 Cal.Rptr.2d 862 (2002), in which the California Court of Appeal held that the availability of other options does not bear on whether a contract is procedurally unconscionable."*Id.* at 1100, 118 Cal.Rptr.2d 862. Rather, when a party who enjoys greater bargaining power than another party presents the weaker party with a contract without a meaningful opportunity to negotiate, "oppression and, therefore, procedural unconscionability, are present." *Ferguson,* 298 F.3d at 784; *Szetela,* 97 Cal.App.4th at 1100, 118 Cal.Rptr.2d 862."

*Id.* at 1172.

In *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778 (9th Cir. 2002)

Countrywide claimed that there was no element of "surprise" or "oppression" in its arbitration agreement because Ferguson had "ample time to consider alternatives to Countrywide's terms of employment" and the contract was "written in plain language." The Ninth Circuit noted that a California appellate court rejected those arguments, "holding that whether the plaintiff had an opportunity to decline the defendant's contract and instead to enter into a contract with another party that does not include the offending terms is not the relevant test for procedural unconscionability. *See Szetela v. Discover Bank,* 97 Cal.App.4th 1094, 118 Cal.Rptr.2d 862, 867 (Ct.App.2002)."*Id.* at 784. The Ninth Circuit, citing *Szetela v. Discover Bank,* 97 Cal.App.4th 1094, 118 Cal.Rptr.2d 862, 867 (Ct.App.2002) stated that "California courts have consistently held that where a party in a position of unequal bargaining power is presented with an offending clause without the opportunity for meaningful negotiation, oppression and, therefore, procedural unconscionability, are present and that where the terms of the employment contract were cast in a 'take it or leave' light and presented as standard non-negotiable provisions, the procedural element of unconscionability is satisfied. *Id.*

These case make clear that under California law when a party who enjoys greater bargaining power than another party presents the weaker party with a contract without a meaningful opportunity to negotiate, oppression and, therefore, procedural unconscionability, are present. This greater bargaining power is based on the fact that Infosys is the employer and Palmer could have either agreed to the conditions or not take the job that had been offered and accepted. The *Armendariz* court noted the disparity in bargaining power in these type case and stated that in "the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." 6 P.3d at 690.

**B.    Infosys's Purported Arbitration Agreement Is Substantively Unconscionable.**

The Court in *Armendariz*, held that Substantive Unconscionability focuses on "overly harsh" or "one-sided" results. 6 P.3d at 690. In *Abramson v. Juniper Networks, Inc.,* 115 Cal. App. 4th 638, 657, 9 Cal. Rptr. 3d 422, 436-37 (Cal. Ct. App. 2004), the court stated that there are a number of factors that may result in substantive unconscionability, but that "the paramount consideration in assessing conscionability is mutuality" and that "substantively unconscionable terms may take various forms, but may generally be described as unfairly one-sided." That court also stated that "when only the weaker party's claims are subject to arbitration, and there is no reasonable justification for that lack of symmetry, the agreement lacks the requisite degree of mutuality."

In *Ingle*, the Ninth Circuit stated that "[u]nless the employer can demonstrate that the effect of a contract to arbitrate is bilateral -- as is required under California law -- with respect to a particular employee, courts should presume such contracts substantively unconscionable." *Ingle*, 328 F.3d at 1174 That Court further stated the following:

> The one-sided coverage we found objectionable in *Adams III* remains in the version of the arbitration agreement we evaluate in this case.[5] *See Adams III,* 279 F.3d at 893-94. Circuit City's arbitration agreement applies only to "any and all employment-related legal disputes, controversies or claims of an Associate," thereby limiting its coverage to claims brought by employees. By the terms of this agreement, Circuit City does not agree to submit to arbitration claims it might hypothetically bring against employees. Without a reasonable justification for such a glaring disparity based on "business realities," "it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee." *Armendariz,* 24 Cal.4th at 117, 99 Cal.Rptr.2d 745, 6 P.3d at 692; *see* Cal. Civ.Code § 1670.5(b). Therefore, as we held in *Adams III,* this "unjustified one-sidedness deprives the [arbitration agreement] of the 'modicum of bilaterality' that the California Supreme Court requires for contracts to be enforceable under California law." *Adams III,* 279 F.3d at 894; *Armendariz,* 24 Cal.4th at 117, 99 Cal.Rptr.2d 745, 6 P.3d at 692.

*Id.* at 1173.

The *Armendariz* court also addressed this point stating as follows:

> "Given the disadvantages that may exist for plaintiffs arbitrating disputes, it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee, without at least some reasonable justification for such one-sidedness based on "business realities." As has been recognized " 'unconscionability turns not only on a "one-sided" result, *118 but also on an absence of "justification" for it.' " (*A & M Produce Co., supra,* 135 Cal.App.3d at p. 487, 186 Cal.Rptr. 114.) If the arbitration system established by the employer is indeed fair, then the employer as well as the employee should be willing to submit claims to arbitration. Without reasonable justification for this lack of mutuality, arbitration appears less as a forum for neutral dispute resolution and more as a means of maximizing employer advantage. Arbitration was not intended for this purpose. (See *Engalla, supra,* 15 Cal.4th at p. 976, 64 Cal.Rptr.2d 843, 938 P.2d 903.)"

6 P.3d at 692.

Infosys's purported arbitration clause is exactly the type of non-mutual agreement that is substantively unconscionable because it forces the employee to arbitrate all claims while allowing Infosys to go to court for other claims.  Infosys' Offer Letter to Palmer stated the following:

> In the event of any dispute or claim relating to or arising out of our employment relationship, you and the Company agree that all such disputes shall be fully and finally resolved by binding arbitration . . . .  HOWEVER, we agree that this arbitration provision shall not apply to any disputes or claims relating to or arising out of the misuse or misappropriation of the Company's trade secrets or proprietary information.

(Exhibit 3, p. 4) (emphasis in original).  This exclusion for Infosys's claims is further described in Infosys's Form No. 5 "At-Will, Confidential Information, Invention Assignment, Non-Compete and Arbitration Agreement," with which Infosys reserves the right to avoid arbitration, and seek a court order for injunctive. It states as follows:

> I agree that any party may also petition the ***Court*** for injunctive relief  where either party alleges or claims a violation of the Employment, Confidential Information, Invention Assignment Agreement between me and Infosys or any other agreement regarding trade secrets, confidential information, non-solicitation or Labor Code §2870.

(Exhibit 5, Form No. 5, paragraph 11d) (emphasis added).

In *Martinez v. Master Prot. Corp.*, 118 Cal. App. 4th 107, 115, 12 Cal. Rptr. 3d 663, 670 (Cal. Ct. App. 2004) the court held that the arbitration agreement in issue was substantively unconscionable because it required employees to arbitrate the claims they are most likely to assert against the employer, while simultaneously permitting the employer to litigate in court the claims it is most likely to assert against its employees. "Claims for unpaid wages, wrongful termination, employment discrimination and the like invariably are brought by employees, while claims involving trade secrets, misuse or disclosure of confidential information, and unfair competition typically are asserted only by employers." The same is true here.

In *Mercuro v. Superior Court*, 96 Cal. App. 4th 167, 176, 116 Cal. Rptr. 2d 671 (Cal. Ct. App. 2002) the court struck down a similar arbitration clause because "the agreement compels arbitration of the claims employees are most likely to bring against Countrywide. On the other hand, the agreement specifically excludes claims for injunctive and/or other equitable relief for intellectual property violations, unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information... Thus the agreement exempts from arbitration the claims Countrywide is most likely to bring against its employees." *Id.* at 677.

The arbitration clause here is similarly one-sided. Palmer, Awasthi and other Infosys employees are required to arbitrate all of the claims that they are  likely to have, but Infosys can go to court for its most likely claims for "trade secrets, confidential information, non-solicitation or Labor Code §2870." It is difficult to even imagine a possible claim like these being made by Palmer or another Infosys employee.   The intended effect is clear:  Palmer can never file a claim in court, but Infosys can.

Infosys's documents also fail the minimum requirements for substantive conscionability because Infosys explicitly limits Plaintiff's remedies.  In *Armendariz*, the Court enunciated minimum requirements for the lawful arbitration of such rights pursuant to

a mandatory employment arbitration agreement. *Armendariz,* 24 Cal. 4th at 102. One of the requirements for an arbitration agreement to be lawful is that it must contain a "provision for **all** of the types of relief that may be awarded by the court." *Armendariz*, 24 Cal. 4th at 102 (emphasis added); *Gelow* v. *Cent. Pac. Mortg. Corp.*, 560 F. Supp. 2d 972, 981 (E. D. Cal. 2008) In *Gelow,* the court struck down the arbitration provision, reasoning that the arbitration agreement was "equivocal." In doing so the court stated the following:

> Here, the language of the arbitration agreements is equivocal. Although they state that the arbitrator "may award any remedy authorized by law," the very next sentence limits the arbitrator's authority.[6] *See, e.g.,* Launey Decl. ¶ 3, Exh. B (employment contract of Jeffrey Just) § 6.08. Among other limitations, it states that the arbitrator may not "require Employer to adopt new Company policies or procedures." *Id.* This is a remedy that a court could order as a form of injunctive relief. Because the arbitration agreements do not allow it, their limitation on the possible remedies available to an employee is substantively unconscionable. *See Ingle,* 328 F.3d at 1178-79; *Armendariz,* 24 Cal.4th at 102, 99 Cal.Rptr.2d 745, 6 P.3d 669.

560 F. Supp. 2d at 981

> Infosys' arbitration clause is very similar to *Gelow's.* Infosys' states the following:

> Notwithstanding, the Arbitrator will not have the authority to disregard any or refuse to enforce any lawful Infosys policy, and the Arbitrator shall not order or require Infosys to adopt a policy not otherwise required by law which Infosys has not adopted.

(Exhibit 5, Form No. 5, paragraph 11c).  Just like in *Gelow,* Infosys deliberately limited the Arbitrator's power to create remedies.  This one-sided attempt to skew the arbitration process violates the rule of both *Armendariz* and *Gelow.* As a "minimum" requirement, arbitration agreements must provide for "for all of the types of relief that may be awarded by the court."

Infosys clear intent was for it to be able to seek Court intervention but require Palmer and other employees to arbitrate their claims. This point was also set out in the arbitration clause where Infosys required Palmer to "expressly consent to the personal jurisdiction of the state and federal courts located in California for any lawsuit filed there against me by the Company arising out of or related to the this Agreement." (Exhibit 5, Form No. 5, paragraph

23

12a)  Thus, Infosys deliberately protected its own right to sue Palmer and its other employees, in Court, in California, while compelling Palmer to seek arbitration.  This provision is substantively unconscionable because it is non-mutual in multiple aspects. First, Palmer is required to consent to personal jurisdiction, but Infosys is not.  Second it applies only to "any lawsuit filed against" Palmer, but not to suits filed by Palmer against Infosys. Third, Infosys selected a venue where its world sales headquarters is located, Fremont, California. Thus, if Infosys chooses to sue Palmer he will have the added expense and inconvenience of have to defend himself in California. Finally, instead of requiring arbitration for its own claims, Infosys again reserved the right to litigate in "state and federal courts located in California."

## CONCLUSION

Based on the above, Palmer submits that this Court should follow the decision in *Awasthi* and the other authorities cited herein and deny Infosys' Motion to Compel Arbitration and allow Palmer to pursue his claims before this Court and a jury of his peers.

Respectfully submitted this the 12th day of April, 2011.

KENNETH J. MENDELSOHN (MEN001)

OF COUNSEL:
JEMISON & MENDELSOHN, P.C.
1772 Platt Place
Montgomery, Alabama 36117
(334) 213-2323
(334) 213-5663 Fax

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and accurate copy of the foregoing has been served on all parties of record via electronic filing or U.S. Mail on this the 12th day of April, 2011.


OF COUNSEL

Jay St. Clair
Anna Curry Gualano
LITTLER MENDELSON, P.C.
Wells Fargo Tower
Suite 2300
420 20th Street No.
Birmingham, AL        35203-3204
jstclair@littler.com
agualano@littler.com