IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| JACK PALMER, JR., | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
|    v. | ) | 2:11cv217-MHT |
| | ) | (WO) |
| INFOSYS TECHNOLOGIES | ) | |
| LIMITED INCORPORATED, | ) | |
| | ) | |
|    Defendant. | ) | |

OPINION and ORDER

Pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, defendant Infosys Technologies Limited Incorporated moves to compel arbitration of plaintiff Jack Palmer, Jr.'s claims of breach of contract, intentional infliction of emotional distress, negligent hiring, training, monitoring and supervising, and legal misrepresentation.  Jurisdiction is proper under 28 U.S.C. §§ 1332 (diversity) & 1441 (removal).  For the reasons given below, the motion will be denied.

## I.  Background

This case stems from allegations of visa fraud and retaliation.  Palmer alleges that, while employed as an Infosys consultant, he uncovered evidence of fraud in the procurement of H-1B visas for specialty workers. Specifically, he believes that Infosys improperly asked employees to write "welcome letters" for unskilled workers.  Palmer asserts that, upon reporting this information to his supervisors and Infosys's "Whistleblower Team," he was subjected to various forms of harassment, including threatening phone calls, denial of bonuses, derogatory comments, and increased working hours without appropriate compensation.

Palmer filed suit in an Alabama state court, but Infosys removed the case on diversity-of-citizenship jurisdictional grounds.  Infosys now moves to compel arbitration pursuant to an arbitration agreement included in Palmer's employment contract.

## II.   Standard for Arbitration

The FAA is a "congressional declaration of a liberal federal policy favoring arbitration agreements."  <u>Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24 (1983).   Section 2 of the FAA provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract."   9 U.S.C. § 2.   Section 2's final phrase "permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." <u>AT&T Mobility LLC v. Concepcion</u>, ___ U.S. ___, ___, 131 S. Ct. 1740, 1746 (2011) (quotation marks omitted).

"The FAA thereby places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." <u>Rent-A-Center, West, Inc. v. Jackson</u>, ___ U.S. ___, ___, 130 S. Ct. 2772, 2776 (2010) (internal citations omitted).   Thus,

there is a "presumption of arbitrability" as to claims falling within an arbitration agreement.   <u>AT&T Technologies, Inc. v. Communications Workers of America</u>, 475 U.S. 643, 650 (1986).

In addition to arbitrating the merits of a dispute, "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether the agreement covers a particular controversy," <u>Rent-A-Center</u>, ___ U.S. at ___, 130 S. Ct. at 2777; "[a]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce." <u>Id</u>. at ___, 130 S. Ct. at 2777-78.

Although federal policy permits arbitrators to decide these gateway questions, there is a crucial caveat. Arbitrators may not decide that which the parties have not agreed to arbitrate.   <u>See</u> <u>United Steelworkers of America v. Warrior & Gulf Navigation Co.</u>, 363 U.S. 574, 582 (1960) (noting that "arbitration is a matter of

contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit"); <u>Janiga v. Questar Capital Corp.</u>, 615 F.3d 735, 740 (7th Cir. 2010) ("[F]ederal law places arbitration clauses on equal footing with other contracts, not above them."). "This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." <u>Communications Workers</u>, 475 U.S. at 648-49. The Supreme Court, therefore, has mandated a heightened threshold for determining whether there has been an agreement to arbitrate arbitrability: "Unless the parties <u>clearly and unmistakably</u> provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." <u>Id</u>. at 649 (emphasis added).

## III. Discussion

Palmer raises two arguments against mandatory arbitration. First, Palmer contends that the arbitration agreement's delegation provision does not "clearly and unmistakably" grant the arbitrator the power to decide arbitrability; if he prevails on this threshold argument, Palmer submits that the arbitration agreement is void on unconscionability grounds.

### A.   Adjudicating Arbitrability

Palmer's first argument focuses on which institution decides arbitrability: the court or the arbitrator.  In answering this question, the court must determine whether the parties "clearly and unmistakably" delegated this decision to the arbitrator.  This standard is a "revers[e] presumption--one in favor of a judicial, rather than an arbitral, forum." Rent-A-Center, ___ U.S. at ___, 130 S. Ct. at 2783 (Stevens, J., dissenting)

(alteration in original) (quotation marks and footnote omitted).

The arbitration agreement provides, in all capital letters, that: "ALL CONTROVERSIES, CLAIMS, OR DISPUTES WITH ANYONE ... ARISING OUT OF, RELATING TO, OR RESULTING FROM MY EMPLOYMENT WITH INFOSYS OR THE TERMINATION OF ANY EMPLOYMENT WITH INFOSYS, INCLUDING ANY BREACH OF THIS AGREEMENT, SHALL BE SUBJECT TO BINDING ARBITRATION." Arbitration Agreement, Doc. No. 4-1, at 7.  The agreement further states that: "THE ARBITRATOR SHALL HAVE THE POWER TO DECIDE ANY MOTIONS BROUGHT BY ANY PARTY TO THE ARBITRATION, INCLUDING MOTIONS FOR SUMMARY JUDGMENT AND/OR ADJUDICATION AND MOTIONS TO DISMISS AND DEMURRERS, PRIOR TO ANY ARBITRATION HEARING." Id. at 8.  The arbitration agreement requires conformity with California law and American Arbitration Association (AAA) rules, with the former controlling if there is a conflict.

The arbitration agreement does not "clearly and unmistakably" confer authority to the arbitrator to

**7**

decide gateway questions. It discusses only controversies or claims "arising out of, relating to, or resulting from" employment. The agreement does not contemplate questions concerning its own validity; the arbitration clause is silent as to these threshold inquiries. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 945 (1995) ("A party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers.").

Rent-A-Center provides a useful comparison. The delegation provision in that case provided: "The Arbitrator ... shall have exclusive authority to resolve any dispute relating to the ... enforceability ... of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable." Rent-A-Center, ___ U.S. at ___, 130 S. Ct. at 2777 (alteration and ellipses in original) (quotation marks omitted). The district court concluded that the delegation provision satisfied the "clearly and

unmistakably" standard.   Id. at 2777 n.1.   Here, by contrast, there is no mention of who decides whether the agreement is void.

Infosys contends that the AAA's rules prescribe that the arbitrator should determine this gateway question. Even if such cross-references to rules and statutes could "clearly and unmistakably" confer authority on an arbitrator to decide arbitrability, Infosys's argument is misplaced.  California law, which controls here, provides that the court should decide whether an agreement to arbitrate a gateway issue exists.   See Cal. Code Civ. Pro. § 1281.2(b) ("[T]he court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that [g]rounds exist for the revocation of the agreement.").

Infosys further asserts that the Supreme Court's recent decision in Rent-A-Center dictates that unconscionability challenges should be decided by the

arbitrator.   Infosys overreads <u>Rent-A-Center</u>.   The Court's opinion opens with a simple question: whether "a district court may decide a claim that an arbitration agreement is unconscionable, <u>where the agreement explicitly assigns that decision to the arbitrator</u>." <u>Rent-A-Center</u>, ___ U.S. at ___, 130 S. Ct. at 2775 (emphasis added).   The Court also acknowledged that neither party disputed the district court's finding that the agreement "clearly and unmistakably" conferred authority to the arbitrator to decide gateway issues. <u>Id</u>. at ___, 130 S. Ct. at 2777 n.1.   Thus, <u>Rent-A-Center</u> controls only if the "clearly and unmistakably" issue is decided in Infosys's favor.   See <u>Morocho v. Carnival Corp.</u>, 2011 WL 147750, *1 & n.2 (S.D. Fla. Jan. 18, 2011) (Martinez, J.) (distinguishing <u>Rent-A-Center</u> on similar grounds).

The parties, therefore, have not "objectively revealed an intent to submit the arbitrability issue to arbitration." <u>First Options</u>, 514 U.S. at 944.

B.   Unconscionability

Because the parties did not "clearly and unmistakably" agree to arbitrate arbitrability, this court must decide Palmer's unconscionability challenge.

Under California law, "[u]nconscionability analysis begins with an inquiry into whether the contract is one of adhesion." Armendariz v. Foundation Health Psychcare Services, Inc., 6 P.3d 669, 689 (Cal. 2000).  A contract of adhesion is another term for a "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." Id. (internal quotation marks omitted).

The court then asks whether the contract is procedurally and substantively unconscionable. Procedural unconscionability focuses on "'oppression' or 'surprise' due to unequal bargaining power," while substantive unconscionability hinges on "'overly harsh' or 'one-sided' results." Id. at 690.  While both must be

11

present to invalidate a contract, "they need not be present in the same degree." Id. California courts have adopted a "sliding scale" approach to adjudicating unconscionability claims.  Id.

Infosys contends that the contract is neither procedurally nor substantively unconscionable because it permitted Palmer to obtain legal advice prior to signing and because it provided for a fair arbitration in accordance with California law.  Palmer relies on a California trial court's ruling that an identical Infosys arbitration agreement was unconscionable. See Awasthi v. Infosys Technologies Limited, No. RG09486022 (Cal. Super. Ct. 2010).  The court agrees with the California court's finding of unconscionability.

Here, it is clear that the arbitration agreement is a contract of adhesion.  The arbitration provisions, included within a larger employment contract, are boilerplate and drafted by the party with superior bargaining power, the employer.

Similarly, the contract is procedurally unconscionable. The employment agreement begins: "As a condition of my employment with Infosys ... I agree to the following." Arbitration Agreement, Doc. No. 4-1, at 2. Palmer concluded that this was a "take-it or leave-it requirement" of employment with Infosys. Palmer Affidavit, Doc. No. 8-1, at 4. Indeed, "few employees are in a position to refuse a job because of an arbitration requirement." Armendariz, 6 P.3d at 690. This type of "'oppression' ... due to unequal bargaining power" suffices for a finding of procedural unconscionability. Id.

Regarding substantive unconscionability, California courts invalidate contracts if there is a "lack of mutuality" in their arbitration agreements. Id. at 691. Here, the arbitration agreement requires that all disputes between Infosys and Palmer, regardless of who asserts the claim, shall be decided by an arbitrator. The agreement then lists the types of claims to be

13

decided by an arbitrator, all of which rely on antidiscrimination or labor statutes protecting employee rights. See Arbitration Agreement, Doc. No. 4-1, at 7. However, the arbitration agreement provides that either party may seek injunctive relief in court for claims relating to intellectual property or trade secrets. See id. at 8.

While these provisions are fair on their face, it is obvious that the types of claims that must be arbitrated are those most commonly brought by an employee, while those likely initiated by an employer can be filed in court. California law creates a presumption of unconscionability under such arrangements. As the California Supreme Court explained: "If an employer does have a reasonable justification for the [lack of mutuality] arrangement ... such an agreement would not be unconscionable. Without such a justification, we must assume that it is." Armendariz, 6 P.3d at 694. Infosys's motion to compel arbitration is silent as to

14

this provision and asserts that there is no lack of mutuality in the arbitration agreement.  See Motion to Compel Arbitration, Doc. No. 4, at 11-12.  In the absence of a reasonable justification for this lack of mutuality, the court must presume the contract is unconscionable.

The court also notes that California law "indicates that protecting against breaches of confidentiality alone does not constitute a sufficient justification" for lack of mutuality.  Davis v. O'Melveny & Myers, 485 F.3d 1066, 1081 (9th Cir. 2007).  This ruling accords with numerous holdings under California law finding arbitration agreements unconscionable for their asymmetrical treatment of trade-secrets claims.  See, e.g., Nagrampa v. MailCoups, Inc., 469 F.3d 1257, 1287 (9th Cir. 2006) (en banc) ("[T]he arbitration provision itself states the purported business justification for excluding MailCoups's right to obtain provisional relief on any cause of action it might assert: 'to protect its Service Marks and proprietary information.'  California courts

routinely have rejected this justification as a legitimate basis for allowing only one party to an agreement access to the courts for provisional relief."); Armendariz, 6 P.3d at 694 ("An employee terminated for stealing trade secrets, for example, must arbitrate his or her wrongful termination claim ... while the employer has no corresponding obligation to arbitrate its trade secrets claim against the employee."); O'Hare v. Municipal Resource Consultants, 132 Cal. Rptr. 2d 116, 124 (Cal. Ct. App. 2003) (finding agreement unconscionable for allowing judicial relief of trade-secrets claims).

Finally, after the briefing in this case was completed, the Supreme Court handed down AT&T Mobility LLC v. Concepcion, ___ U.S. at ___, 131 S. Ct. 1740 (2011). The Concepcion Court held that the FAA preempted California's rule that waivers of classwide arbitration were unconscionable. While this case also involves a feature of California's unconscionability doctrine,

Concepcion does not control here.   See Sanchez v. Valencia Holding Co., LLC, 2011 WL 5027488, *7 (Cal. Ct. App. Oct. 24, 2011) (noting that California's unconscionability doctrine survives Concepcion so long as it does not relate to waiver of classwide arbitration).

The Concepcion Court held that requiring the "availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." Concepcion, ___ U.S. at ___, 131 S. Ct. at 1748.   The Court's proffered reasons for conflict were that classwide arbitration was less efficient, more costly to defendants, and procedurally formal.   See id. at ___, 131 S. Ct. at 1751-52.   These attributes undermined the "principal advantage of arbitration--its informality." Id. at ___, 131 S. Ct. at 1751.

While the Concepcion Court expressed concern about arbitration morphing into a set of formalized, class-based procedures, this arbitration agreement is

unconscionable at an antecedent step. The arbitration agreement is unconscionable because of its lack of mutuality as to the availability of arbitration and the types of claims that may proceed to a judicial forum. The agreement does not impact the internal procedures of arbitration at all.  In fact, California's rule against a lack of mutuality encourages arbitration, as arbitration is contingent on both parties's claims being subject to the arbitral forum.  Thus, California's "lack of mutuality" rule does not "interefere[] with fundamental attributes of arbitration" and is not preempted by the FAA.  Id. at ___, 131 S. Ct. at 1748.

* * *

Accordingly, it is ORDERED that defendant Infosys Technologies Limited Incorporated's motion to compel arbitration (Doc. No. 4) is denied.

DONE, this the 9th day of November, 2011.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE