IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| JACK "JAY" PALMER, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:11cv217-MHT |
| | ) | (WO) |
| INFOSYS TECHNOLOGIES | ) | |
| LIMITED INCORPORATED and | ) | |
| INFOSYS LIMITED, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

Plaintiff Jack "Jay" Palmer, Jr., brings this lawsuit
against defendants Infosys Technologies Limited
Incorporated and Infosys Limited (together referred to as
"Infosys") based on these state-law claims: breach of
contract; outrage; negligence and wantonness; negligent
hiring, training, monitoring and supervising; and
fraudulent misrepresentation.[1]   Jurisdiction is proper

---

1. Palmer concedes that summary judgment in favor of
Infosys is appropriate on the aspect of his claim
alleging negligent hiring, etc. of the "Whistleblower"
team.   The aspect of his negligent-training claim
involving the "Human Resources" team remains pending.
Palmer Opposition Brief (Doc. No. 87) at 37.

under 28 U.S.C. §§ 1332 (diversity) & 1441 (removal). Infosys now moves for summary judgment in its favor. For the reasons given below, the motion will be granted.

## I.  SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## II.  BACKGROUND

Infosys is a software company based in Bangalore, India.  Like many firms in our global economy, it works across borders and employs citizens from numerous countries.  It often needs to obtain visas for its Indian

2

employees to travel to the United States for conferences or to work on a permanent basis.

Infosys also employs American citizens in the United States. Palmer began working for Infosys in August 2008 as a principal consultant. His starting salary was set at $ 145,008, and he is eligible for bonuses per the company's incentive plan. His job as a consultant requires that he rotate on and off projects.

While on a business trip to Infosys's corporate headquarters in March 2010, Palmer uncovered a massive visa fraud.[2] He believes that the company manipulated the B-1 visa program, which permits business visits, in order to send Indian employees to the United States to work on a permanent basis. In May 2010, the company asked him to write "welcome letters" for prospective B-1 visa

---

2. Palmer's brief spends an inordinate amount of time addressing whether Infosys engaged in visa fraud. To be clear, this litigation does not concern whether Infosys violated American immigration law. Rather, Palmer's suit rises and falls on a simple inquiry: whether he has created a genuine dispute of material fact on his state-law claims.

3

applicants; he thought that these letters were fraudulent and refused to participate in the scheme.   Shortly thereafter, he notified Linda Manning in Infosys's Human Resources Department about the alleged visa fraud.   In response to his complaint, he was chastised by his supervisors and told to "keep quiet."   In October 2010, after repeated requests that he participate in the visa-fraud scheme, he met with the company's in-house counsel and decided to file an internal whistleblower complaint.

Palmer subsequently reported these allegations to federal authorities.   As a result, Infosys is currently under investigation by the Department of Homeland Security and a federal grand jury.   He has also testified before the United States Senate Subcommittee on Immigration, Refugees, and Border Security.

Palmer contends that, since his visa-fraud allegations he has been the target of a retaliation campaign.   His grievances can be grouped into two categories.   First, he contends that his bonuses have been adversely affected.

4

He believes that the bonuses he received in June 2010
($ 16,229), December 2010 ($ 7,251), June 2011 ($ 12,534),
and December 2011 ($ 8,000) were below the rate set in his
contract.   Second, he submits that he has been the target
of harassment.   Regarding work assignments, he was placed
on projects from October 2009 to June 2010, July 2010 to
October 2010, and October 2010 to April 2011; however, he
has not had an assignment since April 3, 2011, and spends
his days sitting at home waiting for work to come in from
the company.   He believes that the company is refusing to
give him work in an attempt to force him out.   Further, he
complains that he has experienced many computer problems
and has been shut out of the company's network.[3]

Perhaps most worrisome, Palmer has received numerous
threats related to his visa-fraud allegations.   These
threats include:

- On October 27, 2010, at 12:37 a.m.,
  Palmer's wife answered their home phone

---

3.   Palmer, however, refuses to hand over his company
computer for examination out of fear that someone will
copy his hard drive.

5

and a man with an Indian accent asked to
speak with him.  His wife said he was
unavailable, and the caller mumbled
something and hung up.  A similar
incident occurred that same night at
2:27 a.m.

● Palmer has received other threatening
calls along the lines of "Why are you
doing this, you stupid American, we have
been good to you."

● On February 28, 2011, Palmer reported
to work to find a note on his keyboard
stating that, "Jack: Just leave your not
wanted here hope your journey brings you
death stupid American."  Palmer Exhibit
13 (Doc. No. 47-5) at 6 (typographical
errors in original).  When Palmer turned
on his computer, a word document
displayed the same message.

● On April 21, 2011, Palmer received an
email stating that, "if you make cause
for us to sent back to india we will
destroy you and yuor family."  Palmer
Exhibit 14 (Doc. No. 46-5) at 7
(typographical errors in original).

● On May 25, 2011, Palmer received a
threat through his LinkedIn account from
Vinodbhai Mankar, an Indian national and
self-professed "advocate" of Infosys:
"you still working at infy? they should
have fired you long back ... after you
stabbed their back by falsely
implicating them on the misuse of visa.
unfortunately infy is an indian company

6

> and indian's don't stab ... even in the
> front. that's what hypocrites like you
> take advantage of.  Hope they learn the
> rule of Tit for Tat.  I just wish you
> were here in India. we would have taken
> *good* care of you."  Palmer Exhibit 11
> (Doc. No. 47-4) (typographical errors in
> original).

As a result of these threats, Palmer is emotionally distraught, takes antidepressants, and sometimes carries a concealed gun.


## III.  DISCUSSION

Infosys moves for summary judgment on all five of Palmer's state-law claims.  Because the basis of the court's jurisdiction is diversity and because the claims at issue are state claims, it is Alabama substantive law, not federal substantive law, that governs this case.  Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938).  This court must therefore make an educated guess of how the Alabama courts, and, in particular, the Alabama Supreme Court, would resolve these claims.  Blue Cross & Blue Shield of Ala., Inc. v. Nielsen, 116 F.3d 1406, 1413 (11th Cir.

1997) ("The final arbiter of state law is the state supreme court, which is another way of saying that Alabama law is what the Alabama Supreme Court says it is.").

Because Palmer's claims arise out of his employment, it is important to keep in mind that Alabama is an 'at-will' employment state.  The Alabama Supreme Court has explained that: "The bedrock principle of Alabama employment law is that, in the absence of a contract providing otherwise, employment in this state is at-will, terminable at the will of either party.  Under this doctrine, an employee may be discharged for any reason, good or bad, or even for no reason at all."  Ex parte Amoco Fabrics and Fiber Co., 729 So. 2d 336, 339 (Ala. 1998).  And an extension of this principle and logic would be that, absent a contract providing otherwise, employee may be demoted, denied a promotion, or otherwise adversely treated for any reason, good or bad, or even for no reason at all.  The Alabama Supreme Court has, rightly or wrongly, jealously guarded this at-will status and

8

recognized only statutory exceptions (for example, worker's compensation restrictions) and a few narrow non-statutory exceptions.  See id. ("Among those [non-statutory] limitations is an exception, recognized by [the Alabama Supreme] Court, for implied contracts arising out of the use of an employee handbook. ... [T]he provisions of an employee handbook can become a binding unilateral contract, thereby altering an employment relationship's at-will status. ... [But] not all employer communications would justify such treatment.  Rather, only those employer communications meeting the traditional requirements for the formation of a unilateral contract--an offer, communication, acceptance, and consideration--will bind the parties.").  It is against this backdrop of Alabama law, like it or not, that the court considers Palmer's claims arising out of his employment.

A.  Breach of Contract

Palmer contends that he and Infosys had a contract that the company breached.  To make out a breach-of-contract claim, he must show (1) a valid contract binding the parties, (2) his own performance under the contract, (3) Infosys's nonperformance, and (4) damages.  State Farm Fire & Cas. Co. v. Slade, 747 So. 2d 293, 303 (Ala. 1999).

Palmer contends that Infosys breached its contract with him by not paying him a 30 % bonus.  He believes that his semiannual bonuses since June 2010 have been undervalued.  Additionally, he submits that his "on the bench" status--that is, that he has not received an assignment since April 2011--contributes to his reduced bonuses.

First, there is no formal document, signed by Palmer and an appropriate Infosys officer or supervisor, bearing the heading "employment contract" or something comparable.  Rather, to support the notion that he has an employment

10

contract, Palmer relies on an annual letter or document the company sends him setting forth his salary and possible bonus. While the court doubts that this document constitutes an employment contract, the court will assume that it does, for Palmer cannot recover on his breach-of-contract claim even it does.

First of all, Palmer misconstrues the document. As an initial matter, the document does not state that he is entitled to a 30 % bonus in any year. Rather, it states: "For this year [2008], the maximum bonus you can earn will be 30 % of your paid our Base Salary." Infosys Contract (Doc. No. 47-1) at 133. Thus, Palmer was not even entitled to 30 % bonus for his first year at the company.[4]

Moreover, Palmer's bonuses are governed by Infosys's incentive plan, which awards bonuses on a sliding scale from 0 % to 100 % of base salary. Bonuses are set according to a multi-factor analysis, which looks to

---

4. Palmer does not challenge his bonuses from 2008 and 2009.

individual, unit, and company-wide performance. Additionally, the incentive plan provides that:

> "The company reserves the right to administer, construe and interpret the Plan to make all determinations related to the Plan to approve all bonus payments prior to payment, and to resolve all issues and disputes related to the Plan, all in the Company's discretion. The Company's decisions on these subjects shall be final, conclusive and binding on all concerns."

Incentive Plan (Doc. No. 47-6) at 3. Palmer, therefore, is not entitled to any specific bonus amount in any year. As such, he cannot establish his breach-of-contract claim under Alabama law.[5]

### B.  Outrage

Palmer contends that, despite the at-will status of employees in this state, Infosys's overall treatment of

---

5.  Palmer initially argued that Infosys had failed to reimburse him for certain expenses.  Because Infosys has rectified that situation, Palmer has dropped that allegation.  Response to First Interrogatories (Doc. No. 47-7) at 4.

him in his employment supports a claim based on the tort
of outrage.   Alabama's tort of outrage "is essentially
equivalent to what many states refer to as 'intentional
infliction of emotion distress.'"   <u>K.M. v. Alabama
Department of Youth Services</u>, 360 F. Supp. 2d 1253, 1259
n.4 (M.D. Ala. 2005) (Thompson, J.).   In order to prove a
claim of outrage, a plaintiff must establish that, "(1)
the defendant ... intended to inflict emotional distress,
or should have known that his or her acts would result in
emotional distress; (2) the act [was] extreme and
outrageous; (3) the act ... caused plaintiff['s] distress;
and (4) plaintiff['s] emotional distress [was] so severe
that no reasonable person could be expected to endure it."
<u>Id</u>. at 1259 (citing <u>Harrelson v. R.J.</u>, 882 So. 2d 317, 322
(Ala. 2003)).   The Supreme Court of Alabama has emphasized
"that this tort does not recognize recovery for 'mere
insults, indignities, threats, annoyances, petty
oppressions, or other trivialities.'"   <u>American Rd. Serv.
Co. v. Inmon</u>, 394 So. 2d 361, 364-65 (Ala. 1980) (citation

13

omitted).    Rather,  recovery  is  appropriate  for  only
"conduct  so  outrageous  in  character  and  so  extreme  in
degree as to go beyond all possible bounds of decency, and
to be regarded as atrocious and utterly intolerable in a
civilized  society."  Id.  at  365.   The  tort  is,  therefore,
"an  extremely  limited  cause  of  action."   Potts  v.  Hayes,
771 So.2d 462, 465 (Ala.2000).

In the at-will employment context, Alabama courts have
especially  cabined  the  tort  of  outrage.   A  plaintiff
alleging  outrage  based  upon  a  termination  must  establish
that  the  firing  was  contrary  to  public  policy  and  was
accompanied  with  the  "sound  of  fury."   Wal-Mart  Stores,
Inc.  v.  Smitherman,  872  So.  2d  833,  840  (Ala.  2003)
(quoting  Harrell  v.  Reynolds  Metals  Co.,  495  So.  2d  1381
(Ala.  1986)).   One  federal  district  court  has  commented
that "unlawful conduct falling short of discharge[] may be
inadequate  to  sustain  a  claim  for  outrage  under  Alabama
law,  even  if  the  employer's  acts  otherwise  are
irreconcilable  with  sound  public  policy."   Lees  v.  Sea

**14**

Breeze Health Care Center, Inc., 391 F. Supp. 2d 1103, 1107 n.3 (S.D. Ala. 2005) (Steele, J.).  This limiting principle accords with the Supreme Court of Alabama's admonition that outrage "should not be the basis for vicarious or respondeat superior liability except in the most compelling circumstances." Busby v. Truswal Systems Corp., 551 So. 2d 322, 327 (Ala. 1989).[6]

Palmer asserts that the campaign of harassment and, in particular, the numerous threats he has received are sufficient to state a claim of outrage under Alabama law.[7]

---

6. Egregious sexual harassment appears to be the sole example of an outrage claim from the employment context that does not involve a termination.  Carraway Methodist Health Systems v. Wise, 986 So. 2d 387, 401 (Ala. 2007).

7. Palmer points to Holmes v. Oxford Chemicals, Inc., 672 F.2d 854 (11th Cir. 1982), as an additional basis for his outrage claim.  In Holmes, the plaintiff suffered a heart attack that rendered him permanently disabled.  His employer reduced his disability benefits from $ 500 a month to $ 49.10 in an attempt to force him to apply for Social Security disability.  Id. at 856. Here, by contrast, Palmer's base salary has increased from $ 145,008 in 2008 to $ 165,000 today.  While Palmer believes his bonuses are inadequate, he cannot base a claim of outrage on salary diminution given the undisputed facts about his base salary.

15

Courts have frequently rejected outrage claims based on similar accusations of threats and disparate treatment at work.  See, e.g., Thrasher v. Ivan Leonard Chevrolet, Inc., 195 F. Supp. 2d 1314, 1319 (N.D. Ala. 2002) (Buttram, J.) (finding that "discrimination with regard to overtime hours, scrutiny, and termination--which lasted a period of eight days--is not sufficiently egregious" to support an outrage claim).  The court finds Little v. Robinson, 72 So. 3d 1168 (Ala. 2011), particularly instructive.  The plaintiff, a city council member, alleged that the mayor of Anniston issued a death threat during a public meeting and that the two men almost came to blows.  The mayor also stated that Little was part of the "black corruption" problem in the city.  Id. at 1170. The Supreme Court of Alabama disagreed that the mayor's comment--that if "it had gotten ugly, '[w]e'd be having [Little's] funeral today,'" id. at 1169--was a death threat but nonetheless recognized that the two men were engaged in a heated confrontation that quickly escalated.

<u>Id</u>. at 1173.   Despite a near-physical encounter and racially explosive language, the Supreme Court of Alabama concluded that the mayor's behavior did not constitute outrage as a matter of law.   <u>Id</u>.

Similarly, while the electronic and telephonic threats and anti-American statements are deeply disturbing, it is clear that the Alabama Supreme Court would not view them as "beyond all possible bounds of decency," so that it must "be regarded as atrocious and utterly intolerable in a civilized society." <u>Inmon</u>, 394 So. 2d at 365.   Moreover, under Alabama law, because Palmer has not been terminated, a claim of outrage may only proceed to trial under the most egregious fact pattern.   Alabama law is, therefore, clear that the record here is insufficient to support the "extremely limited  cause of action" known as the tort of outrage.[8] <u>Potts</u>, 771 So.2d at 465.

_____

    8.   Because this court concludes that the Alabama Supreme  Court would find that the alleged conduct was not extreme or outrageous, this court need not decide Infosys's alternative contention that there is no evidence that the threats were made by its employees.

## C.  Negligence and Wantonness

Palmer brings a claim of negligence and wantonness.

---

Although not mentioned by the parties, the court notes that the United States Supreme Court's recent decision in Snyder v. Phelps, 131 S. Ct. 1207 (2011), may be applicable in this case. The Snyder Court held that an intentional infliction of emotion distress claim is barred if the challenged speech was on a matter of public concern.  "Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community."  Id. at 1216 (internal quotation marks omitted).  It can hardly be disputed that immigration policy is a matter of public concern.  Additionally, Palmer received the email threats after he went public with his story; as Palmer's brief explains, the complaint filed in this action prompted considerable discussion in the information-technology industry.  Palmer Opposition Brief (Doc. No. 87) at 17.  The threats directed at Palmer, while objectionable, are part and parcel of injecting oneself into the political arena.  Cf. Doe v. Reed, 130 S. Ct. 2811, 2837 (2010) (Scalia, J., concurring in the judgment) (remarking that "harsh criticism, short of unlawful action, is a price our people have traditionally been willing to pay for self-governance. Requiring people to stand up in public for their political acts fosters civic courage, without which democracy is doomed").  As such, the First Amendment may present a bar to Palmer's outrage claim because "'in public debate [we] must tolerate insulting, and even outrageous, speech in order to provide adequate "breathing space" to the freedoms protected by the First Amendment.'" Snyder, 131 S. Ct. at 1219 (quoting Boos v. Barry, 485 U.S. 312, 322 (1988)) (alteration in original).

More specifically, he believes that Infosys has failed to protect him from retaliation in violation of its whistleblower policy.

To prove a negligence claim under Alabama law, a plaintiff must establish duty, breach, causation, and damages.   Armstrong Business Services, Inc. v. AmSouth Bank, 817 So. 2d 665, 679 (Ala. 2001).   A wantonness claim requires a plaintiff to demonstrate that the defendant acted or failed to act with reckless indifference to the consequences of its acts or omissions. Id. at 679-80.

Infosys argues, and this court agrees, that Palmer is attempting to bootstrap a whistleblower retaliation claim into a negligence or wantonness tort.   But there is no evidence that Alabama tort law recognizes (arguably as an exception to the State's at-will status) an independent cause of action for negligently or wantonly failing to prevent whistleblower retaliation.   As such, Palmer's

19

negligence-and-wantonness claim must fail under Alabama law.

## D. Negligent Hiring, Training, Monitoring, and Supervising

Palmer also brings a claim of negligent hiring, training, monitoring, and supervising. "A party alleging negligent or wanton supervision and hiring must ... prove the underlying wrongful conduct of employees." <u>Voyager Ins. Companies v. Whitson</u>, 867 So. 2d 1065, 1073 (Ala. 2003).

Palmer has conceded that his negligent hiring, etc. claim is contingent on his negligence-and-wantonness claim. <u>See</u> Palmer Opposition Brief (Doc. No. 87) at 37; <u>see also supra</u> Section III.C. Because Palmer's negligence-and-wantonness claim fails under Alabama law, so, too, does his negligent hiring, etc. claim.

E.   Fraudulent Misrepresentation

Palmer submits that Infosys's failure to enforce its whistleblower policy constitutes fraudulent misrepresentation. Because his claim is predicated on a promise of future behavior--namely, to enforce the whistleblower policy--Palmer must establish the elements of promissory fraud. Wade v. Chase Manhattan Mortgage Corp., 994 F. Supp. 1369, 1378-79 (N.D. Ala. 1997) (Hancock, S.J.). To make out a promissory-fraud claim, Palmer must show that "(1) a false representation (2) of a material existing fact (3) reasonably relied upon by [him] (4) who suffered damage as a proximate consequence of the misrepresentation." S.B. v. St. James Sch., 959 So.2d 72, 101 (Ala. 2006) (quotations and citations omitted). In addition, he must show that "(5) .. at the time of the misrepresentation, the [company] had the intention not to perform the act promised, and (6) ... the [company] had an intent to deceive." Id.

21

Here, Palmer has failed to establish the fifth and sixth elements of his claim.  He has presented no evidence that, when Infosys issued its whistleblower policy in 2003, it intended to deceive and not enforce the policy. As such, Palmer's fraud claim must fail under Alabama law.

* * *

Without question, the alleged electronic and telephonic threats are deeply troubling.  Indeed, an argument could be made that such threats against whistleblowers, in particular, should be illegal.  The issue before the court, however, is not whether Alabama should make these alleged wrongs actionable, but whether they are, in fact, illegal under state law.  This court cannot rewrite state law.  Therefore, for the reasons given throughout this opinion, this court must conclude that, under current Alabama law, Palmer has no right to recover from Infosys.

An appropriate summary judgment in favor of Infosys and against Palmer will be entered.

DONE, this the 20th day of August, 2012.

                    /s/ Myron H. Thompson
              UNITED STATES DISTRICT JUDGE